IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| HOMELAND MUNITIONS, LLC, BIRKEN STARTREE HOLDINGS, CORP., KILO CHARLIE, LLC and LC DEFENSE, LLC, <br><br> Plaintiffs, <br><br><br> vs. <br><br><br> PURPLE SHOVEL, LLC, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER <br><br><br><br><br><br> Case No. 2:17-CV-207 <br><br> Judge Dee Benson |

This matter is before the Court on Defendant Purple Shovel, LLC's ("Purple Shovel") Motion for Judicial Confirmation of the Arbitration Award. (Dkt. No. 25.) More specifically, Purple Shovel moves the Court pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 6, 9, and the Utah Uniform Arbitration Act, Utah Code Ann. § 78B-11-123, to confirm the Final Award entered in favor of Purple Shovel by the International Institute of Conflict Prevention and Resolution in Arbitration No. G-17-20-C issued on June 2, 2017, and to enter judgment against Plaintiffs Homeland Munitions, LLC ("Homeland"); Birken Startree Holdings, Corp.; Kilo Charlie, LLC; and LC Defense, LLC (collectively "Plaintiffs" or "Homeland entities") in the amount of $9,986,909.92.

1

On June 27, 2017, Plaintiffs filed a timely opposition to the motion, and on July 3, 2017, Defendant replied, rendering the motion ready for decision. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the Court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. DUCivR 7-1(f).

## BACKGROUND

Defendant Purple Shovel, a government contractor that supplies services and products to the United States government, entered into a prime contract with a U.S. government agency in 2015. Purple Shovel later entered into a "Basic Ordering Agreement (BOA) Subcontract Agreement Number Sub-BOA-PS027" with Homeland. The BOA provided that Homeland would supply Purple Shovel with materials and services in support of Purple Shovel's prime contract. Homeland and Purple Shovel also entered into a separate Non-Circumvention Agreement which further reflected and reinforced their intention to enter into an exclusive relationship.

The BOA included a "Dispute Resolution and Governing Law" clause, Article 20, which contained the following dispute resolution provision:

> Each party agrees to timely notify the other party of any claim, dispute or cause of action arising under or related to this Agreement and Orders issued hereunder and to negotiate in good faith to resolve any such claim, dispute or cause of action. If a resolution is unable to be reached between both parties, the dispute may be resolved by arbitration. The arbitration will be conducted in accordance with the Rules for Non-Administered Arbitration of the International Institute for Conflict Prevention and Resolution then in effect. The arbitration will be conducted before an arbitrator who shall be an attorney experienced in federal procurement law. The arbitrator shall have no power to award non-monetary or equitable relief of any sort. It shall also have no power to award lost profits; or consequential, indirect, punitive, exemplary or special damages or any direct damages in excess

of the liability cap set forth in the limitation of liability provision included in this
Agreement.

(Dkt. No. 9, Ex. A at 14-15.)

For purposes of this Order, suffice it to say, Homeland failed to perform its obligations under the BOA to provide ammunition to fulfill the orders awarded to Purple Shovel. As a result, Purple Shovel, in order to cover its contractual obligations, had to seek ammunition elsewhere and at a higher cost than had been quoted to it by Homeland, and in some instances Purple Shovel was unable to find the necessary cover. Purple Shovel considered this conduct by Homeland to be a complete breach of the BOA and Non-Circumvention Agreement.

By letter dated August 5, 2016, Purple Shovel notified Homeland of its claim of breach of the BOA and the Non-Circumvention Agreement. It followed up with a demand letter dated August 22, 2016. Homeland did not respond to either. Accordingly, on September 12, 2016, Purple Shovel served a Notice of Arbitration, which included a full statement of claims asserted against Homeland, Birken Startree and Kilo Charlie pursuant to Article 20 of the BOA.[1] The Homeland entities did not file an answer and no attorney entered an appearance on their behalf. Although the parties had agreed to a "non-administered" arbitration – meaning that the parties would run the arbitration without the assistance of the International Institute of Conflict Prevention Resolution ("the CPR") – when Homeland failed to participate, Purple Shovel invoked the CPR's assistance to select an arbitrator.

---

[1] Purple Shovel named all three plaintiffs in the Notice of Arbitration because one month prior, on August 1, 2016, Homeland had informed Purple Shovel that going forward Homeland would only be an "operational company," overseen by a board of directors through Birken Startree and managed by its parent company, Kilo Charlie. (Dkt. No. 9, Ex. C.)

In December 2016, some discussion ensued between the parties. No resolution resulted. Then, in January of 2017, the CPR selected Michael D. Zimmerman, former Chief Justice of the Utah Supreme Court, as the Arbitrator. Plaintiffs did not object to this appointment. Rather, on February 9, 2017, the Homeland entities filed a "limited appearance" and a Motion to Terminate or Stay the Arbitration. The motion argued the following: (1) that the reference to arbitration under the CPR Rules in Article 20 of the BOA was insufficient to contractually bind Homeland to arbitrate, and (2) that the BOA did not give the arbitral tribunal jurisdiction over Birken Startree and Kilo Charlie, non-parties to the BOA and Non-Circumvention Agreement.

On February 23, 2017, after review of Homeland's motion to terminate arbitration, Homeland's reply to Purple Shovel's opposition to the motion, and a second motion to stay arbitration and extend time to respond to Purple Shovel's claims, the Arbitrator issued Order No. 2, denying Homeland's motions.[2] In Order No. 2, as a threshold matter, the Arbitrator determined he had authority to determine issues of arbitrability. Additionally, the Arbitrator addressed each of Homeland's arguments in detail and concluded (1) that the arbitration provision was binding on the parties (Order No. 2 at 3-5),[3] and (2) that all of the Respondents – Homeland Munitions, Birken Startree and Kilo Charlie – were bound to the arbitration provision

---

[2]The Arbitrator's Orders will be referred to as "Order No. __." The Arbitrator's Orders 2 through 8 are attachments to Dkt. No. 9 (Order No. 2 at Ex. G; Order No. 3 at Ex. H; Order No. 4 at Ex. I; Order No. 5 at Ex. K; Order No. 6 at Ex. L; Order No. 7 at Ex. M; Order No. 8 at Ex. N). The Arbitrator's Orders 9 and 10 are attachments to Dkt. No. 25 (Order No. 9 at Ex. V; Order No. 10 at Ex. W).

[3]The Arbitrator found on three alternative grounds that the tribunal had jurisdiction over the parties and that they were bound to arbitrate their dispute to conclusion.

in the BOA (Order No. 2 at 6).[4]

In early March, the Arbitrator ordered the Homeland entities to either appear in the proceeding and pay the requisite fees or face default. (Order No. 4.) The Homeland entities were to respond by March 20, 2017. (*Id.*) Instead of filing a response by that date, Homeland moved to stay the arbitration or for an extension of time to respond. The Arbitrator provided an extension of time until April 5, 2017. (Order No. 7.) Homeland failed to respond by the new deadline.

On April 7, after not receiving a response, the Arbitrator entered default against the Homeland entities, and set a final evidentiary hearing for April 24, 2017, for the purpose of argument on Purple Shovel's Motion for Determination of Breach and Amount of Damages. (Order No. 8.) Despite having been given notice, no one appeared for Homeland at the April 24 hearing and no filings were received from or on their behalf. At the hearing, the Arbitrator raised a number of questions and requested additional information from Purple Shovel. Purple Shovel complied with this request, filing a supplemental brief on May 9, 2017. On May 17, 2017, the Arbitrator held an additional hearing, addressing the issues in the supplemental brief, and then took the matter under advisement.

---

[4] In Order No. 9, issued May 23, 2017, the Arbitrator affirmed his prior conclusion that Birken Startree and Kilo Charlie were bound by the arbitration agreement, and added an additional entity - LC Defense, LLC (which the Utah governmental website indicates is Homeland Munition, LLC by a new name). The Arbitrator found, "based on the information before the tribunal, that Birken Startree Holdings, LLC, and Kilo Charlie, LLC, as well as LC Defense, LLC are beneficiaries of the BOA and Non-Circumvention Agreement, affiliates and/or successors of Homeland Munitions, and alter egos and/or agents of Homeland Munitions, LLC and/or Brady McCorkle." (Order No. 9 at 4.) This caused the Arbitrator to conclude that "all three entities, as well as Homeland, are bound by the agreement to arbitrate in the Subcontract." (*Id.*)

5

On May 23, the Arbitrator issued Order No. 9, concluding that the Homeland entities were in breach of the contract with Purple Shovel, and fixing the amount of damages that would be awarded. The Arbitrator also awarded Purple Shovel "all costs of this arbitration," and directed Purple Shovel to submit an itemization of costs. (Order No. 9 at 8.)

On May 31, 2017, after reviewing Purple Shovel's request for attorneys' fees and expenses, and based on the damage determinations made in Order No. 9, the Arbitrator issued a "Total Final Award" in the amount of $9,986,909.92 to Claimant Purple Shovel against Respondents Homeland Munitions, LLC, Birken Startree Holdings, Corp., Kilo Charlie, LLC, and LC Defense, LLC. (Order No. 10, Final Award.)

As stated above, on June 5, 2017, Purple Shovel filed a Motion for Judicial Confirmation of the Arbitration Award. On June 27, 2017, new counsel entered an appearance on behalf of Homeland. That same day, Homeland filed an Opposition to Purple Shovel's motion, asserting that the arbitration award should be vacated under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10 and under Utah Code. Ann. § 78B-11-123.

## DISCUSSION

The Federal Arbitration Act reflects a "strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration." *Metz v. Merrill Lynch, Pierce, Fenner & Smith*, 39 F.3d 1482, 1488 (10th Cir. 1994). In light of the federal policy favoring arbitration of disputes, Congress erected very few barriers to the confirmation and enforcement of arbitration awards under section 9 of the FAA. Upon receiving an application, a court "must grant" an order confirming the award "unless the award is vacated, modified, or corrected as prescribed" in sections 10 and 11 of the FAA. *Id.*

The United States Supreme Court has stated, there is "nothing malleable" about this standard: it "unequivocally tells the court to grant confirmation in all cases, except when one of the prescribed exceptions applies" and "carries no hint of flexibility." *Hall St. Assocs. LLC, v. Mattel, Inc.*, 552 U.S. 576, 587 (2008). Applying this standard, the United States Court of Appeals for the Tenth Circuit has explained that the standard for judicial review of an arbitration award is "among the narrowest known to law." *Brown v. Coleman Co.*, 220 F.3d 1180 (10th Cir. 2000) (quoting *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995)); *Ormsbee Dev. Co. v. Santa Fe Pac. R.R.*, 668 F.3d 1140, 1147-48 (10th Cir. 1982) ("Once an arbitration award is entered, the finality of arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances.").

The narrow bases on which an arbitration award may be vacated are set forth in § 10 of the Federal Arbitration Act. Section 10 provides, in pertinent part, that a court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or *undue means*;
> . . . or
> (4) where the *abitrators exceeded their powers*, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10 (emphasis added).

Relying on § 10, Plaintiffs assert they have sufficient grounds to vacate the arbitration award in this case. Plaintiffs claim that the Arbitrator exceeded his powers by determining the issue of arbitrability and subjecting Plaintiffs to an arbitration to which they did not agree; exceeding his powers under the BOA contract; and issuing an award against non-signatory parties. Plaintiffs also assert that the arbitration award was procured by undue means.

Having reviewed the record in this case and the memoranda filed by the parties, and applying the standard of review set forth above, the Court concludes that Plaintiffs have failed to demonstrate circumstances sufficient to vacate the arbitration award.

## I. The Dispute was Properly Submitted to Arbitration

As an initial matter, the Court concludes that the Arbitrator did not exceed his authority by determining that the parties intended to submit the dispute to arbitration. The parties agreed to arbitrate the issue of arbitrability by incorporating the CPR Rules into their contract. As the Arbitrator explained in Order No. 2, the CPR Rules provide that "the tribunal shall have the power to hear and determine challenges to jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." CPR Rule 8.1. Further, "the tribunal shall have the power to determine the existence, validity or scope of the contract of which an arbitration clause forms a part." CPR Rule 8.2. These rules explicitly and expressly assign the question of arbitrability to the arbitrator. It is well-established that the Arbitrator's determination that this dispute was arbitrable is entitled to substantial deference. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[A] court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration.").

The Arbitrator, in Order No. 2 and Order No. 9, set forth in extensive detail his bases for concluding that the arbitration provision was binding on the parties. (Order No. 2 at 3-5; Order No. 9 at 4.) In fact, the Arbitrator found "on three alternative grounds that the arbitral tribunal had jurisdiction over the parties and that they were bound to arbitrate their dispute to conclusion." (Order No. 7 at 2.) Having reviewed these Orders and the reasoning set forth therein, the Court finds them to be consistent with the language set forth in the BOA and

applicable law. Additionally, the Court finds that any objection Plaintiffs had to the tribunal's jurisdiction was waived by requesting that the tribunal exercise its authority to terminate the arbitration on grounds that the parties had not agreed to arbitrate the dispute.

In light of these facts and the deference that must be given to the Arbitrator, the Court concludes that the Arbitrator did not exceed his authority in concluding that the dispute was properly submitted to arbitration.

## II. There is No Basis to Conclude that the Arbitrator Exceeded His Power With Regard to Any Matter Within His Jurisdiction

A party must "clear a high hurdle" in demonstrating that an arbitrator exceeded his authority under Section 10(a)(4) of the FAA, because it is not enough to show that the arbitrator "committed an error – or even a serious error." *Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). Instead, an award will be vacated only where "an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of . . . justice." *Id.* "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (quoting *E. Assoc. Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)). Given this standard, the Court finds unpersuasive Plaintiffs' arguments that the Arbitrator exceeded his authority under the BOA.

### A. The Arbitrator's Qualifications

First, the Court finds baseless Plaintiffs' argument that the Arbitrator was not "an attorney experienced in federal procurement law" and therefore "was not authorized to serve as

an arbitrator." As an initial matter, the Court finds Plaintiffs waived any objection to Arbitrator Zimmerman by asking him to exercise his authority to decide their motion to terminate arbitration. Moreover, as Purple Shovel points out, had Plaintiffs elected to participate in the arbitration, they would have recognized that Arbitrator Zimmerman was familiar with the Federal Acquisition Regulations and that he sought briefing on the extent to which they governed the issues in dispute. (Dkt. No. 47, Def.'s Reply at 5.) Significantly, the CPR presumably considered Arbitrator Zimmerman to be qualified when it selected him to serve as an arbitrator from its list of potential candidates.

### B. Non-Monetary or Equitable Relief

Second, the Court finds that the Arbitrator did not exceed his authority by awarding "non-monetary or equitable relief" as prohibited by the BOA. To the contrary, it was entirely within the Arbitrator's authority to order Homeland to enter an appearance, execute the engagement letter and pay arbitration fees or else risk default. In so doing, the arbitrator was not "award[ing] ... non-monetary or equitable relief." Moreover and importantly, Plaintiffs do not assert that any relief awarded in the "Final Award" is improper "non-monetary or equitable relief."

### C. Awarding Expected Profits

Third, the Court concludes that the Arbitrator did not exceed his authority by awarding Purple Shovel its expected profits from a contract awarded to a competitor. The Arbitrator determined that certain damages were warranted because Purple Shovel would have been awarded several "line items" in the prime contract using Homeland's pricing had Homeland not undercut several of Purple Shovel's bids by quoting lower prices to a Purple Shovel competitor,

ADS. (Dkt. No. 25 at 43, 46, Ex. S, Claimants Mot. For Determination of Breach and Amount of Damages at 7, 10 & n.4.)

The Arbitrator carefully considered whether the BOA permitted recovery of Purple Shovel's expected net profit on these items. To that end, the Arbitrator sought supplemental briefing and explicitly noted that the BOA dispute resolution provision stated that the arbitrator "shall . . . have no power to award lost profits; or consequential, indirect, punitive, exemplary or special damages, or any direct damages in excess of the liability cap set forth in the limitation on liability provision included in this Agreement."

Ultimately, however, the Arbitrator concluded that Purple Shovel's anticipated profits of $2,590,000 on one of the line items constituted "'direct' damages that were clearly anticipated and essential in order to put Purple Shovel in the position it would have been in had Homeland not breached the exclusivity provision." (Order No. 9.) The Arbitrator reasoned: "Absent entitlement to this award, Homeland's blatant breach of an essential provision of the [BOA] would be without a remedy," and he noted that Virginia law (which applies in this instance), specifically Virginia Code § 8.2-719(2), provides for recovery under such instances. *Id.* Given the Arbitrator's detailed consideration of the contract and application of the relevant law, the Court cannot conclude that the Arbitrator exceeded his authority in awarding these damages. *See Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (explaining that a decision that arguably construes or applies the contract must stand, even if the court disagrees with the outcome).

  **III.**  **The Arbitrator Did Not Exceed His Authority in Exercising Jurisdiction over the Affiliates of Homeland Munitions**

Next, the Court finds no basis for concluding that the Arbitrator exceeded his authority in exercising jurisdiction over Birken Startree, Kilo Charlie and LC Defense, LLC. This issue was raised by the Homeland entities on February 9, 2017, in their initial Motion to Terminate or Stay Arbitration, and has been considered and rejected by the Arbitrator on numerous occasions. (Order No. 2, Order No. 6, Order No. 7, Order No. 9.)

In Order No. 2, the Arbitrator noted that under Virginia and federal law, "non-signatories can be bound to arbitrate under several theories grounded in common law of contract and agency." The Arbitrator then discussed the facts pertaining to the organization of Birken Startree and Kilo Charlie and made a preliminary finding that "Birken Startree Holdings and Kilo Charlie were organized at or about the time Homeland Munitions received notice of the claim of breach from Purple Shovel, had been represented by Homeland Munitions to Purple Shovel as integrated with Homeland Munitions in management and operations, and were owned and controlled by the same person(s) who are represented as owning and controlling Homland Munitions, a party to contracts in dispute." (Order No. 2.) Subsequently, in Order No. 6, after being informed that Homeland Munitions had changed its name (in January 2017) to LC Defense, LLC, the Arbitrator added LC Defense as a party to the arbitration. (Order No. 6.)

On May 23, 2017, following the evidentiary hearing, in Order No. 9 the Arbitrator expressly stated that his earlier conclusion had not been undermined and therefore he found as a matter of law and fact, that Birken Startree Holdings, LLC, Kilo Charlie, LLC and LC Defense, LLC are beneficiaries of the BOA and Non-Circumvention Agreement, affiliates and/or successors of Homeland Munitions, and alter egos and/or agents of Homeland Munitions, LLC and/or Bradley McCorkle. The Arbitrator further stated, "under Virginia and federal law, equity

12

requires that these entities be estopped from denying their being bound by the BOA and Non-Circumvention Agreement to the same degree as Homeland Munitions, LLC. . . . [A]ll three entities, as well as Homeland, are bound by the agreement to arbitrate in the Subcontract." (Order No. 9.)

The Arbitrator's decision to exercise jurisdiction over all four Plaintiffs reflects careful consideration over the course of several months of briefing and argument. Plaintiffs submitted their argument regarding jurisdiction to the Arbitrator, and the Court can find no basis for concluding that the Arbitrator exceeded his authority in concluding that the affiliates of Homeland were subject to arbitration.

**IV. There is No Basis to Conclude That the Arbitration Award Was Obtained by Undue Means**

The federal circuit courts of appeals agree that "undue means," as used in the § 10(a)(1) of the FAA, is best construed to refer to "underhanded or conniving ways of procuring an award that are similar to corruption or fraud, but do not precisely constitute either." *Nat'l Cas. Co. v. First State Ins. Grp.*, 430 F.3d 492, 499 (1st Cir. 2005) (noting consensus). Plaintiffs in this case claim that Purple Shovel obtained $7,044,250 in cover damages by undue means because Purple Shovel's initial arbitration demand alleged damages totaling only one-third that amount.

Despite Purple Shovel's significantly increased revised damages estimate and award, the Court finds nothing in the record to support Plaintiffs' claim Purple Shovel's damage award was obtained by undue means. Purple Shovel expressly acknowledges that it revised its initial estimate of damages, and further explains that it did so after determining that the prevailing market rate was substantially higher than its initial estimate because it obtained quotes that were

13

much higher than what it thought would be necessary to cover. (Dkt. No. 47 at 9 & n.5.) Moreover, Plaintiffs do not allege that they lacked notice that Purple Shovel had revised the estimated damages set forth in its arbitration demand, nor do Plaintiffs allege that they lacked an opportunity to respond to the revised estimate with their own evidence.

In sum, the Court finds that although Plaintiffs complain that Purple Shovel was not entitled to the amount of damages they were awarded, they have failed to identify or allege any "underhanded or conniving" conduct that would justify vacating the award.

## **CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion for Judicial Confirmation of the Arbitration Award and confirms the Final Award as a judgment of this Court pursuant to Chapter 1 of the Federal Arbitration Act and the Utah Uniform Arbitration Act.[5]

DATED this 12th day of July, 2017.

_____
Dee Benson
United States District Judge

---

[5] Plaintiffs assert that the award should be vacated under the Utah Uniform Arbitration Act for the same reasons it should be vacated under the FAA. Because Plaintiffs failed to prevail under the FAA their claims also fail under the UUAA.