Michael L. Ford, #8586
STRONG & HANNI
9350 South 150 East, Suite 820
Sandy, Utah 84070
Telephone: (801) 532-7080
Facsimile: (801) 323-2090

Michael J. Baratz (admitted *pro hac vice*)
Dorothy Brown (admitted *pro hac vice*)
Johanna Dennehy (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue NW
Washington, DC 20036
Tel:   (202) 429-3000
Fax:   (202) 429-3902
Email: mbaratz@steptoe.com
       dbrown@steptoe.com
       jdennehy@steptoe.com

*Attorneys for Purple Shovel, LLC*

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| HOMELAND MUNITIONS, LLC, BIRKEN STARTREE HOLDINGS, CORP., KILO CHARLIE, LLC and LC DEFENSE, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>PURPLE SHOVEL, LLC,<br><br>Defendant. | **DEFENDANT'S MOTION TO PIERCE THE CORPORATE VEIL**<br><br>Case No.: 2:17-cv-00207-DB<br><br>Judge: Paul Warner |

Defendant Purple Shovel, LLC ("Purple Shovel"), respectfully moves pursuant to Federal Rule of Civil Procedure 69(a)(1) for an Order declaring that Bradley McCorkle ("Mr. McCorkle") and McKayl Ruesch McCorkle ("Mrs. McCorkle") are not entitled to the protections

1

of the corporate veil and should be held personally liable for a judgment in the amount of $9,986,909.92 (plus interest) that this Court entered against Plaintiffs Homeland Munitions, LLC ("Homeland"), Birken Startree Holdings, Corp. ("Birken Startree"), Kilo Charlie, LLC ("Kilo Charlie"), and LC Defense, LLC ("LC Defense") (collectively, "Plaintiffs" or "Homeland"), on July 20, 2017.

## I. INTRODUCTION

Since judgment was entered against Homeland, Mr. and Mrs. McCorkle have unabashedly engaged in actions to evade Purple Shovel and thwart the company's collection efforts. While Purple Shovel has maintained open lines of communication with Mr. and Ms. McCorkle in hopes of gaining their cooperation, it has been to no avail.

What reliable information Purple Shovel has received on the existence and location of assets has come through non-party discovery and disclosures. Non-party documents reflect a history of Mr. and Mrs. McCorkle using Homeland and other related entities to defraud customers and now creditors. The McCorkles have diverted funds from business banking accounts to personal banking accounts in order to pay off a $40,000 personal debt, book vacations, and purchase expensive vehicles, including a $175,000 custom truck and Range Rover. Within the last year, they have diverted over a million dollars in customer payments to themselves.

At the same time that he is stripping the Homeland entities of everything of value, Mr. McCorkle continues to do everything in his power to slow down the enforcement of this Court's judgment. Despite being fully aware of a hearing scheduled before this Court on October 26th, Mr. McCorkle evaded accepting personal service of process. A week before the hearing, he contacted Purple Shovel's counsel and claimed to be unable to attend due to work obligations. But Mr. McCorkle's explanation omitted that he was actually in Los Angeles

attending Game One of the World Series. Although Mr. McCorkle complained of another creditor's confiscation of his personal property and made it appear as though he was barely scraping-by, he sat in field-level seats at the sold-out game with his father and brother.

The evidence Purple Shovel has collected from non-parties proves convincingly that Homeland and the other judgment-debtors have been nothing more than shells for Mr. and Mrs. McCorkle's fraudulent activities. Purple Shovel has not collected so much as a dime toward satisfaction of the judgment, yet the McCorkles continue to live a lavish lifestyle with no regard for the millions owed to creditors. For the reasons set out below, Purple Shovel requests that the Court find that Mr. and Mrs. McCorkle are not entitled to the protections of the corporate veil.

## II. FACTUAL BACKGROUND

### A. Proceedings Leading to Judgment Against Plaintiffs

#### i. Breach of Subcontract Agreement

Purple Shovel's dealings with Homeland began on April 26, 2016, when it entered into a Subcontract Agreement (the "Subcontract Agreement") with Homeland Munitions, LLC.[1] Under the Subcontract Agreement, Homeland Munitions, LLC, agreed to exclusively supply Purple Shovel with ammunition and equipment necessary to fulfill contracts with the United States Government. (Ex. 1). Purple Shovel paid Homeland Munitions, LLC a $119,475 deposit for the services and goods to be rendered under the Subcontract Agreement on July 28, 2016. (Ex. 2).

Within two days of receiving Purple Shovel's deposit, Homeland Munitions, LLC repudiated its obligations under the Subcontract Agreement and informed Purple Shovel that it would not perform. When Purple Shovel demanded return of its deposit, Homeland Munitions,

---

[1] Homeland Munitions, LLC was formed in Utah on November 4, 2014, by Bradley McCorkle and McKayl McCorkle. Bradley McCorkle holds an eighty-two percent membership interest in the company. McKayl McCorkle holds an eighteen percent membership interest. (Ex. 3).

3

LLC refused.

        ii.      <u>Arbitration</u>

Having lost both its initial deposit and awards for government contracts it bid on with Homeland price quotes, Purple Shovel sought relief. It submitted the matter to arbitration before the International Institute for Conflict Prevention and Resolution ("CPR") and notified Homeland of the arbitration on September 12, 2016.

Despite initially agreeing to the arbitration, Homeland participated only sporadically and apparently for the sole purpose of delaying the proceedings. Between September 12, 2016, and December 8, 2016, Purple Shovel did not receive any communications from Homeland. The company missed the deadline to submit a Notice of Defense in response to Purple Shovel's initial Notice of Arbitration. It also declined to participate in the process of selecting an arbitrator.

To Purple Shovel's surprise, Mr. McCorkle joined a conference call with CPR on December 8, 2016, and expressed a desire to move forward with the arbitration. He also agreed that Homeland would pay $3,000, its portion of the arbitration fees. Yet, by January 17, 2017, another month of arbitration had passed without the participation of Homeland. Purple Shovel ultimately paid $6,000 in arbitration fees, to cover the obligations of both companies, and selected as arbitrator Justice Michael Zimmerman, former Chief Justice of the Utah Supreme Court.

Homeland appeared a second time on February 10, 2017, and submitted a Motion to Terminate or Stay Arbitration. Justice Zimmerman accepted briefing from both sides on the issues Homeland raised. He decided that the parties were contractually bound to arbitrate the dispute and that he had jurisdiction over Kilo Charlie, LLC and Birken Startree Holdings, LLC as well.

Purple Shovel accepted Justice Zimmerman's decision and prepared to proceed in the arbitration process. However, Homeland filed a Complaint in this Court as well as a Motion for Preliminary Injunction to halt the arbitration. (Dkt. #2). Despite having already stalled the arbitration process by failing to fully participate, Homeland requested and was granted an extension of time (until April 5, 2017) to enter a general appearance in the arbitration.

On April 7, 2017, eight months after Purple Shovel informed Homeland that it breached the Subcontract Agreement, Justice Zimmerman found that Homeland was in default under the CPR arbitration rules and requested briefing from Purple Shovel on Damages. (Ex. 4). As Purple Shovel marshaled evidence for the determination of damages to conclude the arbitral proceeding, it simultaneously prepared to respond to the new action Homeland filed in this Court.

      iii.    <u>Federal Court Action</u>

Homeland forced Purple Shovel to fight on two fronts because it refused to accept the arbitrator's jurisdiction and findings. On June 19, 2017, this Court heard testimony from Mr. McCorkle, who was questioned under oath regarding Homeland's assets. After the hearing, Judge Benson ordered granted Purple Shovel's motion for prejudgment attachment of assets located at Homeland's headquarters. The Court later denied Homeland's Motion for Preliminary Injunction and awarded judgment in the amount of $9,986,909.92 to Purple Shovel on July 20, 2017.

Unfortunately for Purple Shovel, however, the Court's decision did not dissuade Homeland from employing avoidance tactics following the entry of judgment. Homeland has continued a campaign to frustrate any efforts by Purple Shovel to obtain the award it is due.

**B.**    **The McCorkle's Efforts to Hide Assets**

Bradley and McKayl McCorkle have employed a multi-prong strategy to avoid judgment

5

against their companies. First, they frequently form and dissolve companies in order to obfuscate the location and ownership of corporate assets. Second, they withdraw large sums from company bank accounts for personal use. Third, they transfer assets and funds to third parties in order to hide them from creditors like Purple Shovel.

    i.  <u>Formation of Various Corporate Entities</u>

  The McCorkles have formed no fewer than six companies since accepting Purple Shovel's deposit in July 2016. Correspondence between Mr. McCorkle and his current and/or former business associates makes the object of these frequent corporate maneuvers clear: the McCorkles use new corporate structures to "ring fence the assets to protect them so that operations continue," even as creditors attempt to satisfy judgments. (Ex. 5). Mr. McCorkle has said explicitly that he plans to "shut down HM so that all past liabilities are extinguished." *Id*.

  Immediately after receiving Purple Shovel's deposit, the McCorkles formed two new businesses- Kilo Charlie Holdings, Inc. and Birken Startree Holdings, LLC. Kilo Charlie Holdings, Inc. was formed on July 29, 2016. (Ex. 6). Birken Startree Holdings, LLC was formed on August 1, 2016. (Ex. 7). On August 1, 2016, Purple Shovel received a letter from Homeland that foreshadowed the web of shell-companies that now complicates this case. The letter stated that, "[H]omeland Munitions, L.L.C. will now be an operational company only, oversighted by a board of directors through, 'Birken Startree Holdings, corp.' The entities previously owned by Homeland Munitions, LLC will be managed through the board of directors and its parent company Kilo Charlie, LLC." (Ex. 8). This was explained as an effort to "allow Homeland Munitions, LLC, MAC Defense Technologies, LLC, and Royalty Armament, LLC the needed structure and protection as every great company holds . . . ." *Id*.

  Homeland reorganized yet again in early 2017, changing its name to LC Defense, LLC. (Ex. 9) Homeland did not give Purple Shovel notice of this change. On March 31, 2017,

Bradley McCorkle registered LCD, Inc. in Utah. (Ex. 10). The Articles of Incorporation for the company described its purpose as "defense article manufacturing, ammunition, weapons, etc." Bradley McCorkle registered as the President, Secretary, and Director of the Company. Kale Winkel registered as an Officer and Vice President of the Company. Mr. Winkel was also the Chief Operating Officer of Homeland Munitions, LLC. The Principal Office of LCD, Inc. was listed as 2966 N. Gemini Meadows Lane, Cedar City, UT 84721, the family home of Mr. and Mrs. McCorkle.

Mr. McCorkle also formed ODY Consulting, LLC, an ammunition company operating under the name "Accolade Defense," on June 30, 2017. (Ex. 11). Parker Sheeran and John Sibthorp, former Homeland employees, are also registered members of the company. Purple Shovel recently received an invoice from a customer of ODY Consulting, LLC, for the sale of 100,000 units of blank ammunition worth $18,000. (Ex. 12). The invoice instructed the customer to make payment to a ODY Consulting, LLC's business account at US Bank by September 24, 2017. Mr. McCorkle has never disclosed the existence of ODY Consulting, LLC to Purple Shovel.

In addition to ODY Consulting, LLC, Mr. McCorkle also formed Knich Life, Co., with business associate Casey Currie, an off-road motorsport athlete previously sponsored by Homeland. Mr. McCorkle held himself out to be an owner of Knich Life, Co. on a recently televised episode of Discovery Channel Network show, "Diesel Brothers." (Ex. 13). In the episode, Mr. McCorkle had a $175,000 custom truck redesigned to feature the logo for Knich Life, Co.[2]

---

[2] Further explanation of Mr. McCorkle's purchase of the custom truck may be found in Defendant's Petition for Writ of Garnishment, filed on October 27, 2017.

ii.  <u>Transfers to Personal Checking Accounts[3]</u>

Discovery in this case has revealed an explanation for Homeland's persistent reluctance to relinquish assets to Purple Shovel. The millions of dollars owed to Purple Shovel not only belong to Homeland, they also belong to Mr. and Mrs. McCorkle, who view company assets as their own. The McCorkles have used Homeland assets to pay for expensive trips, vehicles, and other comforts they refuse to part with. They are aggressively protecting their ill-gotten lavish lifestyle.

The following are select transfers from Homeland's business banking accounts to personal banking accounts:

| Date | Amount | Business Account Information | Personal Account Information |
|---|---|---|---|
| 7/29/2016[4] | $5,000 | Homeland Munitions Chase Performance Business Checking Account ***6851 | Mark McCorkle[5] Catalyst Corp. Federal Credit Union Account ***5318 |
| 7/29/2016[6] | $1,644.00 | Homeland Munitions Chase Performance Business Checking Account ***6851 | Mark McCorkle Catalyst Corp. Federal Credit Union Account ***5318 |
| 8/2/2016[7] | $2,178.01 | Homeland Munitions Mountain America Credit Union Account Number ***5803 | McKayl Ruesch and Bradley McCorkle Mountain America Credit Union Account Number |

---

[3] On August 4, 2017, Purple Shovel sent Homeland requests for production of documents. That requests remains unanswered. Purple Shovel learned of the facts in this memorandum through discovery of non-party businesses and individuals associated with Homeland. To date, Homeland has either been unable to or has refused to cooperate with Purple Shovel's discovery efforts.
[4] Ex. 14.
[5] Mark McCorkle is the father of Bradley McCorkle. Mark McCorkle testified that he received $40,000 from Homeland's business banking accounts for the repayment of a personal loan. *See* pages 36-37 of the transcript from the September 14, 2017, Deposition of Mark McCorkle, which is attached as Exhibit 21.
[6] Ex. 15.
[7] Ex. 16.

| | | | ***4848 |
|---|---|---|---|
| 8/18/2016[8] | $14,000 | Homeland Munitions<br>Mountain America Credit Union<br>Account Number<br>***5803 | McKayl Ruesch and Bradley McCorkle<br>Mountain America Credit Union<br>Account Number<br>***4848 |
| 8/19/2016[9] | $6,501.02 | Homeland Munitions<br>Mountain America Credit Union<br>Account Number<br>***5803 | McKayl Ruesch and Bradley McCorkle<br>Mountain America Credit Union<br>Account Number<br>***4848 |
| 9/1/2016[10] | $30,000 | Homeland Munitions<br>Chase Performance Business Checking Account<br>***6851 | Mark McCorkle<br>Catalyst Corp. Federal Credit Union<br>Account ***5318 |
| 9/2/2016[11] | $305,000 | Homeland Munitions<br>Chase Performance Business Checking Account<br>***6851 | Bradley McCorkle<br>Chase Personal Checking Account<br>***7295 |
| 9/30/2016[12] | $50,000 | Homeland Munitions<br>Chase Performance Business Checking Account<br>***6851 | Bradley McCorkle<br>Chase Personal Checking Account<br>***7295 |
| 10/3/2016[13] | $400,000 | Homeland Munitions<br>Mountain America Credit Union<br>Account Number<br>***5803 | McKayl Ruesch and Bradley McCorkle<br>Mountain America Credit Union<br>Account Number<br>***4848 |

Many of the transfers above coincide with large purchases by Mr. and Mrs. McCorkle out of their personal accounts. For instance, on September 5, 2016, just four days after receiving a $305,000 wire transfer from Homeland, Bradley McCorkle purchased a Range Rover from

---

[8] Ex. 17.
[9] *Id.*
[10] Ex. 18.
[11] *Id.*
[12] Ex. 19.
[13] Ex. 20.

Jaguar Land Rover Las Vegas for $103,772.25. (Ex. 22). He paid the full amount with funds from his personal checking account and Homeland's business account.

      iii.      Transfers to Third Parties

           a.      *Deepak Chaudhry*

In order to avoid garnishment from Homeland's accounts, Mr. McCorkle has instructed Homeland customers to direct "all future remittances for ammunition already shipped and to be shipped" to a personal banking account held by Deepak Chaudhry at the State Bank of Southern Utah. (Ex. 23). This instruction was sent out on June 14, 2017, over two months after Judge Zimmerman found Homeland in default. Mr. Chaudhry is a longtime business associate of Mr. McCorkle's. He was previously one of three owners of Homeland's business checking account at the State Bank of Southern Utah. (Ex. 31). In Mr. McCorkle's communications with business associates, he described Mr. Chaudhry and assisting him in transferring assets away from Homeland so that he could bankrupt the company. (Ex. 5).

           b.      *Assets located at Westerns Arms & Ammo*

During the summer of 2017, Homeland stored several tons of machinery at Western Arms & Ammo in St. George, Utah, a business owned by Darrell Shifflet.

On October 6, 2017, Mr. McCorkle sent an email to Purple Shovel's counsel explaining that Homeland stored two machines at Monarch Storage, a storage facility next door to Western Arms & Ammo. (Ex. 25). The email also described several individuals who were purportedly in possession of Homeland property, but explained that Homeland owed significant balances (upwards of $40,000 total) on the property. According to Mr. McCorkle, Purple Shovel would have to pay those balances in order to take the property. *Id*.

Purple Shovel immediately pursued the information Mr. McCorkle provided only to learn that the two machines were old and unusable. On October 6, 2017, Christopher Worrell, Vice

President of Services for Purple Shovel, and Constable James Houghtalen visited St. George, Utah and met with Mr. Shifflet. (Ex. 25). Mr. Shifflet explained that he rented storage space to Mr. McCorkle and John Sibthorp ("Mr. Sibthorp"), a Homeland employee. *Id.* Between September 28 and 30, 2017, Mr. McCorkle and Mr. Sibthorp removed the stored equipment to an unknown location and left only two machines behind. *Id.*

    **C.**    **Homeland and the McCorkles Continue to Evade Purple Shovel and This Court**

        i.    Purple Shovel's Collection Efforts

With appreciation of the extent to which Mr. and Mrs. McCorkle have commingled personal and business funds, Purple Shovel has consistently attempted to collect its award in a manner that is personally respectful to Mr. and Mrs. McCorkle. Purple Shovel has provided the McCorkles several opportunities to direct the company to assets that can be liquidated for satisfaction of the judgment. Mr. McCorkle has even acknowledged that Purple Shovel has not been inappropriately aggressive in its approach, emailing the following to Purple Shovel's counsel on September 21, 2017:

> [I] feel that given the respect extended to my father, I believe you and I can have a professional conversation. Purple Shovel has always been an impressive company in the ammunition/defense industry, in my eyes. I used to love reading about them online as they continued to dominate the industry. . . . I have been told that the contract BJ and I had agreed on, is still open/needs to be delivered. I am more than happy to assist on this so he is not price gouged.

(Ex. 26).

Unfortunately, the respect Purple Shovel has extended Mr. and Mrs. McCorkle, as well as non-parties, has not been reciprocated in the form of useful information from the McCorkles. Mr. McCorkle has contacted Purple Shovel's counsel several times and offered useless information regarding the current location of Homeland assets.

11

ii.  Supplemental Proceeding

Frustrated by Mr. and Mrs. McCorkle's refusal to provide useful information, Purple Shovel requested an opportunity to question Mr. McCorkle on the existence and location of Homeland's assets before the Court. A hearing was set for October 26, 2017. (Dkt. #90). Purple Shovel struggled to personally serve Mr. McCorkle with notice because he never disclosed his location.[14]

On October 20, 2017, Mr. McCorkle claimed to have just learned of the scheduled hearing and sent an email to Purple Shovel's counsel requesting that it be cancelled. He wrote, "I won't even be in the state on the 26, as I have been hired for work that I desperately need. I can barley [sic] afford to feed my daughter as is, so I really need to go to that job Michael." (Ex. 27).

Apparently, the job Mr. McCorkle so desperately needed entailed attending Game One of the World Series. The night of October 24, 2017, Mr. McCorkle attended the sold-out game with his father and brother. He posted a photo from their field-level seats to his personal Instagram account writing, "World Series with Pops and Bro! Let's go Doyers!!!!!" (Ex. 28). Mr. McCorkle was obviously not the distraught, stressed, and down-on-his-luck small business owner he portrayed in emails to Purple Shovel's counsel.

It was no coincidence that Knich Life, Co. posted a photo from field-level, left-field seats at the game to its Instagram account, writing, "World Series Game 1!!!" (Ex. 29). Knich Life, Co. also posted a photo of the custom $175,000 truck on its return trip to Utah after the game on October 29, 2017. (Ex. 29). Although Mr. McCorkle represented to Purple Shovel's counsel that he was without a vehicle, writing, "[I] still don't have my personal cars back . . .," that

---

[14] Counsel previously asked Mr. McCorkle's father, Mark McCorkle, for Mr. McCorkle's current address during his deposition on September 14, 2017. (Ex. 21). Mark McCorkle refused to provide it despite being under oath.

12

apparently did not stop him from returning to Utah in style. (Ex. 27). Mr. McCorkle posted to his Instagram account a photo from a rest stop in Primm, Nevada, the same day as Knich Life, Co.'s return trip with the custom truck. (Ex. 30).

This latest episode is emblematic of the obstacles that Purple Shovel faces in enforcing its judgment against Homeland. In addition to the frustrations presented by Mr. McCorkle, Purple Shovel is in a creditor's race against at least two other companies that have received judgments against Homeland. Without the aid of this Court, Purple Shovel may lose the opportunity to recover assets from Homeland.

It is clear from the evidence collected thus far that Mr. and Mrs. McCorkle have used Homeland and affiliated entities to satisfy their personal greed and created a rather unsophisticated web of shell entities to lure in unsuspecting customers. Now that the McCorkles have stolen Purple Shovel's money, cost the company millions of dollars in government contract awards, forced it to shoulder the complete financial burden of arbitration, and dragged it through rounds of briefing in a case before this Court, they add insult to injury by refusing to follow the Orders of this court. This game absolutely must stop now, in the interest of fairness and equity. Purple Shovel only seeks to collect what it is owed, as recognized by Justice Zimmerman and this Court. Based on the facts set out above, Mr. and Mrs. McCorkle are not entitled to the protections of the corporate veil.

### III. ARGUMENT

As Purple Shovel has pursued assets to satisfy this court's judgment, it has become increasingly apparent that Bradley McCorkle and McKayl Ruesch McCorkle are engaged in a scheme to defraud creditors of millions of dollars for personal benefit. The pair has operated behind the protective veils of multiple businesses, transferring funds between bank accounts held in the names of those businesses to their own personal accounts. Now, even when their

companies have been ordered by this Court to pay Purple Shovel a judgment of $9,986,909.92 (plus interest), they continue to engage in corporate maneuvering to avoid fulfilling Homeland's financial obligations. Mr. and Mrs. McCorkle are not entitled to the protections of the corporate veil and it should be pierced so as to allow Purple Shovel to collect payment in satisfaction of the $9,986,909.92 (plus interest) judgment against Plaintiffs.

> A. **Federal and Utah Law Permit Parties to Pierce the Corporate Veil as Part of Post-Judgment Proceedings**

As a threshold matter, Federal Rule of Civil Procedure 69(a) permits Purple Shovel to seek the equitable veil-piercing remedy during post-judgment proceedings to enforce a judgment. Rule 69(a) provides that "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent is applies." Fed. R. Civ. P. 69(a)(1). Under this rule, a district court may pierce the corporate veil post-judgment in aid of a judgment creditor's enforcement efforts. *See Int'l Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 737 (7th Cir. 2004) ("[A] district court could entertain, under Fed. R. Civ. P. 69(a), a post-judgment motion to pierce the corporate veil."); *see also Aioi Seiki, Inc. v. JIT Automation, Inc.*, 11 F. Supp. 2d 950, 954 (E.D. Mich. 1998) (noting that an alter ego determination could be brought supplementary to and in an effort to enforce a previous judgment of the court pursuant to Fed. R. Civ. P. 69(a)).[15]

> B. **Purple Shovel Is Entitled to Pierce the Corporate Veil and Pursue the Assets of Bradley McCorkle and McKayl Ruesch McCorkle to Satisfy the Judgment Against the Homeland Entities**

---

[15] This Court has subject matter jurisdiction over this diversity action. *See Peacock v. Thomas*, 516 U.S. 349, 359, 116 S. Ct. 862, 869, 133 L. Ed. 2d 817 (1996) ("The Rules cannot guarantee payment of every federal judgment. But as long as they protect a judgment creditor's ability to execute on a judgment, the district court's authority is adequately preserved . . .").

This Court has recognized that a limited liability company may be disregarded, in the same fashion as a corporate entity, if two requirements are met. *See Ditty v. CheckRite, Ltd., Inc.*, 973 F. Supp. 1320, 1335 (D. Utah 1997). First, the court must find that there is such a unity of interest and ownership that the separate personalities of the business and the individual no longer exist, but the business is, instead, the alter ego of one or a few individuals. *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028 (Utah 1979). If the first requirement is met, the court must determine whether disregarding the corporate form would sanction a fraud, promote injustice, or result in an inequity. *Id*. In piercing the veil, the Court reasons that an owner or principal shareholder who conducts his private and corporate business on an interchangeable or joint basis, as if they are one, is without standing to complain when an injured party does the same. *Colman v. Colman*, 743 P2d 782, 786 (Utah Ct.App. 1987).

C. **There exists such a unity of interest and ownership that the separate personalities of Bradley McCorkle, McKayl Ruesch McCorkle, Homeland Munitions, Birken Startree Holdings, and Kilo Charlie have ceased to exist.**

Mr. and Mrs. McCorkles' conduct over the past sixteen months demonstrates clear disregard for the corporate form and a unity of interest with the Homeland entities. Factors that may be relevant to determining whether a unity of interest exists include: (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant shareholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; (7) the use of the corporation as a façade for operations of the dominant stockholder or stockholders; and (8) the use of the corporate entity in promoting injustice or fraud. *Colman*, 743 P.2d 782 at 786. Failure to distinguish between corporate and personal property, the use of corporate funds to pay personal expenses without proper accounting, and failure to maintain complete corporate and financial records are looked upon with extreme disfavor. *ASKM, LLC v. Fry*, No. 2:08-CV-786-TC-DN,

2009 WL 4642060, at *4 (D. Utah Dec. 1, 2009) (quoting *Colman*, 743 P.2d 782, 786 n. 3 (Utah Ct. App. 1987)).

      a.      <u>Bradley McCorkle and McKayl Ruesch McCorkle failed to distinguish between business and personal property.</u>

As this Court observed in *ASKM, LLC v. Fry*, Utah courts very clearly disfavor the siphoning of funds for personal use and the failure to distinguish between personal and business property. *Id.* Bradley McCorkle and McKayl McCorkle have consistently failed to distinguish between their own property and that of Homeland Munitions, Birken Startree, Kilo Charlie Holdings, and LC Defense. The McCorkles frequently transferred large sums of money from Homeland's business banking accounts to their personal accounts. For instance, they purchased a $103,772.25, Range Rover in Nevada the day after receiving a $305,000 wire transfer from Homeland.

The McCorkles viewed Homeland's property as theirs for the taking. With access to Homeland's debit cards and with permission to freely wire funds into and out of the business accounts, both Mr. and Mrs. McCorkle took advantage and either ceased to, or never began to, distinguish between the assets of Homeland and their personal property.

      b.      <u>Bradley McCorkle and McKayl Ruesch McCorkle used the plaintiff entities as facades for their personal affairs.</u>

Mr. and Mrs. McCorkle frequently used funds from Homeland's business banking accounts for their personal affairs. Courts have consistently held that such activities reflect a lack of separate personalities. *See Auto. Fin. Corp. v. Joliet Motors, Inc.*, 761 F. Supp. 2d 789, 794 (N.D. Ill. 2011) (holding that a unity of interest and ownership existed where corporate funds were used to pay for personal bills, television services, utilities, travel expenses, and entertainment tickets); *Politte v. United States*, 587 F. App'x 406, 408 (9th Cir. 2014) (affirming alter ego determination where majority shareholders regularly drew on corporate funds to finance

personal expenses).

One particularly absurd example of this was Mr. McCorkle's payment of a $40,000 personal loan from Homeland's account. Mr. McCorkle's father, Mark McCorkle, confirmed this brazen use of company funds during his deposition.

> Q: Exhibit 4 is another statement from June 2016 and there's a wire transfer of $5,000. Would that also be Verizon?
> A: That is not Verizon.
> Q: Can you tell me about that one?
> A: In fact, you will find that $5,000 and then there's another $5,000 and then there's $30,000 transfer, and those are all repayment of a personal loan.
> Q: Okay. Does that represent complete repayment?
> A: Yes.
> Q: So is that a total of $40,000 that was –
> A: That's correct.[16]

McCorkle Dep. 34:10-21.

Mark McCorkle confirmed that the $40,000 loan repaid from Homeland's business checking account was completely unrelated to Homeland or any other business:

> Q: The money that you lent him, that was for start-up of the business?
> A: Actually, it was unrelated to the business, and dates back long before he even had an inkling of starting an ammunition business. It was purely – purely a personal loan. I – why the – why the money's came from the Homeland account rather than personal account, I can't answer that, but it had nothing to do with Homeland, nothing to do with the start-up of the business.
> Q: Okay. Was it personal or was it related to some other business?
> A: Oh, no, not – not business related at all.
> Q: Okay.
> A: No. Strictly personal. Father and son.

McCorkle Dep. 37:11-24.

        c.      <u>An Inequitable Result Will Follow if Mr. and Mrs. McCorkle Hide Behind the Corporate Form of the Homeland Entities</u>

The second prong of the veil piercing analysis requires a determination as to whether an inequitable result would follow if only the corporation was held liable. *Colman*, 743 P.2d 782,

---

[16] *See* pages 36-37 of the transcript from the September 14, 2017, Deposition of Mark McCorkle, which is attached as Exhibit 30.

786 (Utah Ct. App. 1987). Since Purple Shovel initiated an arbitration proceeding in order to seek relief from Homeland's breach of contract, Mr. and Mrs. McCorkle have engaged in corporate maneuvers intended to deprive Purple Shovel of its due.

In the initial stages of this dispute, Mr. and Mrs. McCorkle created additional entities to hide assets. Now, after Purple Shovel has gained discovery into non-parties associated with the Plaintiff entities, Mr. and Mrs. McCorkle have ratcheted up their efforts to avoid relinquishing Homeland assets, leaving Homeland effectively insolvent and moving assets to new entities. *See Sea-Land Servs., Inc. v. Pepper Source*, 993 F.2d 1309, 1312 (7th Cir. 1993) (holding that the corporate veil could be pierced when the judgment debtor avoided liability by insuring that his corporations had insufficient funds with which to pay debts).

Mr. McCorkle created ODY Consulting, LLC (also known as, Accolade Defense), a company that sells ammunition in the same exact way as Homeland. To date, he has not disclosed the existence of this entity to Purple Shovel. However, he continues to collect payments from customers, directing them to a business bank account at US Bank.

Mr. McCorkle not only diverted account receivables to the ODY Consulting, LLC bank account, he also failed to disclose Homeland's instruction that customers send payments for Homeland products to Deepak Chaudhry's bank account. Finally, Mr. and Mrs. McCorkle have never disclosed the existence of Knich Life, Co. or Mr. McCorkle's association with the company.

Mr. McCorkle's recent social media posts regarding his attendance at Game One of the World Series with his father and brother, with tickets that likely cost over $1,000 each, reflect just how rapidly the McCorkles are disposing of company assets. They have engaged in a shameless pattern of diverting company funds to personal accounts in the past and there is

18

absolutely no indication that this pattern will cease or slow down. Without the intervention of this Court, Purple Shovel will be left without remedy. Such a result would be inequitable and promote injustice.

## IV. CONCLUSION

For the foregoing reasons, Purple Shovel respectfully requests that this Court issue an Order declaring that Bradley McCorkle and McKayl Ruesch McCorkle are not entitled to the protections of the corporate veil.

Date: October 30, 2017

Respectfully submitted,

/s/ Michael L. Ford

Michael L. Ford
STRONG & HANNI

9350 South 150 East, Suite 820
Sandy, UT 84070
Tel:   (801) 532-7080
Fax:  (801) 596-1508
Email: mford@strongandhanni.com

Michael J. Baratz (admitted *pro hac vice*)
Dorothy Brown (admitted *pro hac vice*)
Johanna Dennehy (admitted *pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue NW
Washington, DC 20036
Tel:   (202) 429-3000
Fax:  (202) 429-3902
Email: mbaratz@steptoe.com
       dbrown@steptoe.com
       jdennehy@steptoe.com

*Attorneys for Purple Shovel, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of October, 2017, a true and correct copy of the foregoing **DEFENDANT'S MOTION TO PIERCE THE CORPORATE VEIL** was served by U.S. Mail to the following:

Birken Startree Holdings
2331 W PARK AVE
CEDAR CITY, UT 84721

Homeland Munitions
2331 W PARK AVE
CEDAR CITY, UT 84721

Kilo Charlie
2331 W PARK AVE
CEDAR CITY, UT 84721

LC Defense
2331 W PARK AVE
CEDAR CITY, UT 84721


Service of the motion will also be made on Bradley McCorkle and McKayl Ruesch McCorkle by personal service.

/s/ Michael L. Ford